## 17886

Albert BRUNO, Respondent, v. PENDLETON REALTY
COMPANY, Inc., Appellant

(124 S. E. (2d) 580)

*Messrs. Hagood, Rivers & Young,* of Charleston, *for Ap-·pellant,*

48

*Paul N. Uricchio, Jr., Esq.,* of Charleston, *for Respondent,*

March 14, 1962.

Moss, Justice.

Albert Bruno, the respondent herein, brought this action against Pendleton Realty Co., Inc., the appellant herein, to recover damages for personal injuries suffered by him, at appellant's shopping center, when he was caused to fall as a result of stepping on the edge of a curbing which was concealed by a heavy growth of grass.

The appellant is the owner of a lot of land on which is located the Charleston Heights Shopping Center. This shopping center consists of a number of store buildings leased to various merchants. In front of and to the west of the store buildings there is located a sidewalk running parallel to the store buildings. There is a parking area to the west of this sidewalk. The sidewalk is elevated some four or five inches above the parking area, and at the southernmost end of the sidewalk there is a walkway which runs perpendicular to, and intersects with, the said sidewalk. The sidewalk is approximately four inches above this walkway. The sidewalk and walkway are of concrete construction and have the same color, while the parking area is of black asphalt.

The respondent did, on August 25, 1956, go to the shopping center owned by the appellant for the purpose of purchasing toys from Robinson's Bicycle Shop, a merchant who had a store in said shopping center, for an Elks children's picnic. The respondent, upon learning that Mr. Robinson, the proprietor of the bicycle shop, was at a cafe on Reynolds Avenue, south of the shopping center, walked in a southerly direction on the sidewalk towards the cafe, and turned right to go onto the walkway that led out into the parking area. As the respondent turned to go onto the walkway, he fell, receiving certain injuries.

The complaint alleges that grass had grown in a crack between the sidewalk and the walkway leading into the parking area, and that the growth of the grass was such that it gave the impression that the sidewalk and the walkway were of the same level. It is also alleged that the respondent fell due to stepping on the grass concealing the curb between the sidewalk and walkway and received personal injuries as a proximate result of the negligence and carelessness of the appellant.

The answer of the appellant denied that it was guilty of any negligence and alleged that the respondent, in broad daylight, when conditions were open and visible, fell as a

result of his own negligence in failing to look where he was walking. The answer also charged the respondent with contributory negligence.

The case came on for trial before Honorable Bruce Littlejohn, and a jury, at the November 1959 term of the Court of Common Pleas for Charleston County, South Carolina. The appellant made timely motions for a nonsuit at the conclusion of the respondent's testimony, and for a directed verdict at the close of all the testimony, which motions were refused. The jury returned a verdict for the respondent in the amount of $1,300.00 actual damages. Thereafter, the appellant made motions for judgment *non obstante veredicto* and for a new trial. These motions were refused. The first group of exceptions raise two questions: (1) Was the appellant guilty of any negligence that was the proximate cause of respondent's injuries; and (2) Was the respondent guilty of contributory negligence that will bar him from recovery. We will consider these two questions together.

The question of whether or not there was error in refusing the motions of the appellant for a nonsuit, directed verdict, judgment *non obstante veredicto,* and alternatively for a new trial, requires us to consider the testimony and the reasonable inferences to be drawn therefrom in a light most favorable to the respondent. If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the Court. *Green v. Bolen,* 237 S. C. 1, 115 S. E. (2d) 667. Ordinarily, contributory negligence is an issue for the jury and it rarely becomes a question of law for the Court.

The principles governing liability in a case of this kind are very simple and well settled. One who operates a shopping center where stores are leased to merchants and the owner retains possession and control of the parking area and sidewalks, is not an insurer of the

safety of those who use the parking lot and sidewalks as customers of the merchants leasing the stores, but the owner of the premises owes the customers the duty of exercising ordinary care to keep the passageways, sidewalks and such other parts of the premises as are ordinarily used by the customers in transacting business in a reasonably safe condition. *Hunter v. Dixie Home Stores,* 232 S. C. 139, 101 S. E. (2d) 262; *Gilliland v. Pierce Motor Co.,* 235 S. C. 268, 111 S. E. (2d) 521.

We have also held that in order for a respondent to recover damages, in a case of this nature, there must be proof not only of injury but also that it was caused by actionable negligence. It should also be kept in mind that the doctrine of *res ipsa loquitur* does not apply in this State. *King v. J. C. Penney Co.,* 238 S. C. 336, 120 S. E. (2d) 229.

It is undisputed that there was a difference between the level of the walkway and the sidewalk. Generally, it is not negligence to maintain under appropriate circumstances, different levels in approaches to places of business. *Seal v. Safeway Stores,* 48 N. M. 200, 147 P. (2d) 359. The mere fact that there is a difference between the levels in the different parts of the premises does not, in itself, indicate negligence unless, owing to the character, location and surrounding condition of the change of level, a reasonably careful person would not be likely to expect or see it. *Crocker v. WTAR Radio Corp.,* 194 Va. 572, 74 S. E. (2d) 51. The installation of means to accommodate persons using the premises in their passage up and down a grade between different levels does not constitute negligence, unless the owner or occupant has failed to exercise ordinary care in the construction or maintenance of such installation. *Cameron v. Small,* Mo., 182 S. W. (2d) 565. So, a step-down or a step-up upon premises does not, in and of itself, constitute negligence. *Buck v. Miller Amusement Co.,* 166 Kan. 205, 200 P. (2d) 286; 65 C. J. S., Negligence, § 81, at page 585. It is also true that where a dangerous condition

in premises is latent and of which the owner knew or should have known, and is unknown to invitees, the owner is required to give proper warning in order to relieve himself from liability for injuries incurred by reason thereof. However, one who, with knowledge of the conditions of the premises, goes into danger, he assumes the consequences and, even though there be negligence on the part of the other, if the complainant suffer hurt to which his negligence contributed as a proximate cause, without which it would not have occurred, he is barred of recovery. *Benton v. United Bank Building Co.,* 223 N. C. 809, 28 S. E. (2d) 491, and *Bolen v. Strange et al.,* 192 S. C. 284, 6 S. E. (2d) 466.

Where the sidewalk and the walkway intersect, there was a space or crack at such intersection. Dirt accumulated in this space or crack and grass grew therein to such an extent that it concealed the edge of the sidewalk curbing where it joins the walkway, and gave the appearance that the walkway and sidewalk were on the same level. There was also evidence that this condition had existed for a month or more prior to respondent's injury, notwithstanding the fact that the agents of the appellant inspected the area at least two or three times a week. An officer of the appellant testified that if grass grew above the sidewalk that the appellant did not cut such but depended upon people walking on the grass to eliminate such growth. The respondent, testifying with reference to the grass, said that it had "grown up and covered the edge of the curb and it was impossible to see, and it gave me the impression that it was just a ramp—it was an even—just a level—one continuous sidewalk." He further testified that he had the impression that the sidewalk and the walkway were of the same height. The respondent also testified that a Mr. Steinmeyer picked him up after he fell and that Steinmeyer inspected the place to see what had caused the fall and as he spread the grass apart, the curbing was found under such grass. The respondent testified that he was not familiar with nor had he ever used this particular walkway before.

When Steinmeyer was called as a witness, he testified that the walkway and the sidewalk, at the place where the respondent fell, were of the same color, giving the impression that it was one continuous walk and that there was grass growing in the crack between the sidewalk and the walkway, and such concealed the curb because the grass had grown up over the sidewalk and curb.

Irving Robinson testified that he owned Robinson's Bicycle Shop and that the same was leased from, and located in, the shopping center of the appellant. He testified that he examined the place where the respondent was injured and found a heavy growth of grass overlapping the sidewalk to such an extent that the curb thereof was concealed. He stated that this condition had existed for "a month or better". He further testified that he could not tell that the curb of the sidewalk was there because of the grass overlapping the same. He also stated that the sidewalk and the walkway were constructed of a grayish white concrete.

In the case of *Crosby v. City of Chester,* 197 S. C. 66, 14 S. E. (2d) 552, a pedestrian sued for injuries sustained as a result of stepping into an open valve box hole in the grass covered shoulder of a street. The complaint in said action alleged, *inter alia,* as specifications of negligence on the part of the City that it left the valve box hole open and uncovered; failed to cut the grass on the shoulder so as to afford a view of the open valve box hole; failed to properly inspect the said street, and if an inspection was made, failed to remedy the existing condition. In this case it was held that no error was committed in refusing to grant the City's motion for a nonsuit or for a new trial, and the issue of negligence was properly submitted to the jury because the valve box had been installed by the City and there was evidence tending to show a lack of proper inspection and failure to maintain the shoulder in a reasonably safe condition for necessary pedestrian use.

We think that the evidence on the part of the respondent was sufficient to carry the issue of appellant's negligence to the jury. It was a question for the jury to determine whether the appellant had exercised ordinary care to keep in a reasonably safe condition those portions of its premises ordinarily used by customers in the shopping center. Likewise, we think it was for the jury to say whether in the exercise of ordinary care to make its premises reasonably safe, the appellant should have given warning of the situation, or taken other precautions to guard against injury to the respondent, an invitee, who was unaware of the condition existing at the place where he fell and was injured. We conclude, under the factual showing made by the respondent, that the trial Judge was correct in submitting to the jury the question of whether the injuries to the respondent were proximately caused by the negligence of the appellant. Similarly, we think it was also a question for the jury to determine whether the injuries to the respondent were proximately caused by his sole negligence or contributory negligence.

It is firmly established in this jurisdiction that if the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury. *Peagler v. Atlantic Coast Line Railroad Co.,* 234 S. C. 140, 107 S. E. (2d) 15.

We think there was no error on the part of the trial Judge in refusing the motions of the appellant for a nonsuit, directed verdict, judgment *non obstante veredicto,* and for a new trial.

The final question for determination is whether the verdict in this case could be set aside as inherently vicious, grossly excessive and the result of passion and prejudice.

This Court will not usually interfere in the amounts of verdicts, the matter being ordinarily within the sound discretion of the trial Judge, unless the verdict is so grossly excessive as to be deemed the result of a disregard of the facts and of the instructions of the Court, and to be due to passion and prejudice rather than reason. *Gordon v. Rothberg,* 213 S. C. 492, 50 S. E. (2d) 202; *Jackson v. Solomon,* 228 S. C. 225, 89 S. E. (2d) 436, and numerous other cases. We have also repeatedly held that the assessment of unliquidated damages must rest in the sound discretion of the jury, controlled by the discretionary power of the trial Judge. The amount to be awarded for personal injury and the resulting pain and suffering cannot be determined from evidence of value, for there is no market value on such items. The facts of each case determine the value to be placed on such elements of damage. *Anderson v. Elliott,* 228 S. C. 371, 90 S. E. (2d) 367. It is only when the verdict is so grossly excessive as to indicate that the jury was moved by passion or prejudice or other considerations not founded on the evidence and the instructions of the trial Judge, that it becomes the duty of this Court, as well as the trial Court, to set it aside absolutely. *Nelson v. Charleston & Western Carolina Ry. Co.,* 226 S. C. 516, 86 S. E. (2d) 56.

The respondent is sixty years of age and employed as a tailor. He testified that as a result of his injury he endured pain, had to have his leg in a cast for four weeks and could walk around with the aid of crutches. The respondent also testified that he had difficulty doing his work while his leg was in a cast. The physician, who examined and treated the respondent, testified that he sustained a fracture of the base of the fifth metatarsal and an accute sprain of the anterior talofibular ligament of the right ankle. He further testified that the right foot and ankle were so swollen he could not apply a cast at the time of examination but injected the blood clot under the skin with novocaine to relieve pain. This physician also stated that at the end of

three days from the injury, at which time the swelling in the injured ankle had subsided, he applied a short leg walking cast with the foot in eversion so as to relax the tendons that attach to the broken bone. The amount of the physician's bill was $85.00.

We cannot say as a matter of law that the trial Judge committed an abuse of discretion or error of law in refusing a new trial, on the ground that the verdict for the respondent in the amount of $1,300.00 actual damages is exorbitant and excessive, or that such was the result of a disregard of the facts and of the instructions of the Court, and was due to passion and prejudice, or other considerations not founded upon the evidence.

All exceptions are overruled and the judgment below is affirmed.

TAYLOR, C. J., and LEWIS and BUSSEY, JJ., concur.