Harry Arthur WAINWRIGHT, Executor
of the Estate of Clara Wainwright,
deceased, Plaintiff,

v.

Katherine Pauline THOMAS, Executrix of
the Estate of W. C. Thomas, deceased,
Defendant.

Civ. A. No. 7758.

United States District Court
D. South Carolina,
Florence Division.

Jan. 31, 1966.

Mortimer Eisner, Newark, N. J., Burroughs & Green, Conway, S. C., for plaintiff.

Suggs & McCutcheon, Conway, S. C., for defendant.

SIMONS, District Judge.

This action was originally commenced in the Court of Common Pleas for Horry County, South Carolina by Clara Wainwright, plaintiff, against W. C. Thomas, d/b/a Ocean Pines Motor Court, defendant, to recover damages for personal injuries sustained by plaintiff when she fell at defendant's motel in Myrtle Beach, Horry County, South Carolina, on March 10, 1961. In due course defendant removed the action to this court pursuant to the provisions of Title 28, U.S.C.A., § 1332, based upon the diversity of citizenship between plaintiff, a resident and citizen of the state of New Jersey, and the defendant, a resident and citizen of the state of South Carolina; and the amount in controversy exceeding $10,000.00, exclusive of interest and costs. Subsequent to joinder of issues herein both plaintiff and defendant died; and by appropriate orders their respective personal representatives have been substituted as parties plaintiff and defendant in their stead.

In her complaint plaintiff alleges that at about 7:45 a. m. on March 10, 1961 while she was a paying guest at defendant's Ocean Pines Motor Court in Myrtle Beach she fell out the doorway of the cottage in which she had spent the night as she started outside to get into her automobile to leave. The complaint further alleges that the fall and her resulting injuries and damages were occasioned by the negligence of the defendant in failing to keep the walkway adequately lighted so that she could see where she was walking; in constructing the step and walkway surface of the same color, thus giving the optical appearance of being the same level, creating a dangerous condition; constructing the cottage so that the step was shaded by the roof over the walk so that it could not be clearly seen; and in failing to warn the plaintiff of these conditions when he knew, or should have known of their existence. She further alleged that as a direct and proximate result of such negligence of the defendant she suffered serious, severe, painful, and permanent injuries to her right hip and body necessitating hospitalization, surgery and confinement in bed for several months; that she suffered myocardial insufficiency resulting from arteriosclerotic heart disease, which was precipitated from the stress and strain of her said injuries; that she suffered temporary total and partial permanent disability and continuous pain; and that as a result of said injuries she has incurred great medical, hospital, nursing, and other expenses; and she asks for actual damages from defendant in the amount of $100,000.00.

In his answer defendant sets up the following defenses: 1) A general denial wherein all of the material allegations of plaintiff's complaint are contraverted; 2) sole negligence, recklessness and wilfulness of the plaintiff in the several particulars set forth in the answer; and 3) contributory negligence and recklessness of plaintiff in the particulars set forth in said answer. Defendant also pleaded two additional defenses, both of which were stricken by the court upon plaintiff's motion at trial upon ground they were not relevant and did not constitute a legal defense.

The case was heard before me without a jury at the December 1965 term of this court at Florence, South Carolina pursuant to Rule 39(b) of the Federal Rules of Civil Procedure. As required by Rule 52(a) of said Rules I find the facts specially and state separately my conclusions of law thereon.

## FINDINGS OF FACT

At the time of plaintiff's fall, and for a number of years prior thereto, the

Ocean Pines Motor Court, located at Myrtle Beach, South Carolina, was owned and operated by W. C. Thomas. Prior to his ownership and operation, it had been owned and operated for a number of years by one C. N. Talbot who testified for defendant. Defendant's court was located on the west or southwest side of U. S. Highway No. 17, which extends generally in a North-South direction through the City of Myrtle Beach.

On the afternoon of March 9, 1961, plaintiff, in company with her husband, H. A. Wainwright, and her daughter, Muriel Wainwright, arrived at the Ocean Pines Motor Court at about 5:45 o'clock, registered, and became a paying guest. Mrs. Wainwright and her husband occupied room number 5, while their daughter occupied room number 6.

That same night room number 7, an adjoining room to that occupied by plaintiff's daughter, was occupied by John G. Leach and his wife of Wilmington, Delaware, who were also overnight guests.

The room arrangements were such that each room opened outside to a covered walkway which had a width of approximately twelve feet. The surface of the walkway was elevated about four to six inches above ground level, and was constructed of tile squares, approximately eight inches by eight inches, laid flat, and consisting of varying shades of red color. This walkway was covered by a roof which was approximately nine feet above the surface of the walkway, and which extended over the same. The walkway was not enclosed, but was completely open on the driveway [or northern] side. The door opening of the motel room was approximately three feet by six feet-eight inches, and there was a single colonial type wood door which controlled this opening for entrance or exit. This door was hung so as to open to the inside of the room. The floor of the motel room was covered by wall-to-wall carpet of beige color, and this carpet was secured at the threshold by a metal strip, which was virtually flush with the threshold. The threshold itself was constructed of wood and was painted green. The

floor level of the room was approximately ten inches above the surface of the outside walkway, and there was a single brick step or riser from the walkway to the opening of the room. This step or riser was approximately forty-five inches long, had a tread of about sixteen [16] inches, was about six [6] inches above the level of the walkway, and about four [4] inches below the floor level of the room. The step was constructed of brick of a red color range, laid on edge, with a single eight-by-eight inch tile square in each of the front corners. Immediately in front of the step or riser and located upon the surface of the walkway was a red rubber mat having the word "WELCOME" across its center.

The evidence is conflicting in reference to the design, construction and coloring of the walkway, steps and entrances into the rooms at the motel. Plaintiff's witnesses generally admitted that the steps and walkway were somewhat different in design and materials, but stated that the brick steps and the tile walkway were about the same or similar in color. On the other hand defendant's witnesses asserted that there was a substantial difference and variation in the design, color, and texture of the materials between the steps and the walkway. After a careful consideration of this most vital issue I have concluded that there was a definite and a readily discernable difference in the color and/or shade, texture and design between the brick steps immediately in front of the doorway of each motel room and the walkway six inches below the step level. The steps are made of brick laid on edge which are a darker red color than the reddish eight-by-eight inch tile of which the walkway is constructed. There was also a noticeable difference in the shade of the red rubber mat placed immediately in front of the steps on the walkway, which contrasted with the colors of the step and walkway. As one left the motel room there was also an obvious contrast between the beige wall-to-wall carpeting inside the room, the green wooden threshold across the doorway entrance, and

the steps, the rubber mat and the walkway.

The photographs of the room opening, step and walkway [both color and black and white] introduced in evidence clearly portray the arrangement and the condition which existed on the morning of March 10, 1961, the date of the accident in question.

On the date of this accident, the motel room arrangement with respect to the entrance or exit from rooms 5, 6, and 7 was the same.

On the afternoon of March 9, 1961, at about 5:45 o'clock the plaintiff, Clara Wainwright, entered room number 5 shortly after arriving at the motel. She left this room on the evening of March 9, 1961 to obtain an evening meal at Schrafft's Restaurant; and later during that evening, she re-entered the room to retire for the night. Thus, prior to her fall she had used the entrance way and steps to her room on three occasions without any difficulty.

The next morning at about 7:45 o'clock Mrs. Wainwright started to leave the motel room for the purpose of entering the family automobile to continue a trip to Florida. She was unaccompanied at the time, and carried in her hand a lady's handbag. As she left the room, she stepped out the door and fell, sustaining serious and permanent injuries, which caused her to be temporarily totally and permanently partially disabled, and required subsequent extensive hospitalization, surgery, nursing and medical care. She also developed after the accident a myocardial insufficiency which resulted from arteriosclerotic heart disease, which was most probably precipitated or at least aggravated by the injuries received in the fall and the suffering resulting therefrom. She continued to suffer disability and severe pain until the time of her death.

On the date of the accident Mrs. Wainwright was approximately seventy-eight years of age, although her husband and daughter did not know her exact age. She was wearing glasses, which had been changed from time to time [the last change having been a year or so prior to the accident in question]. She had experienced two prior falls in her home, both involving steps. About July 4, 1960, she had slipped on the steps at home, and had fallen. Some thirty to thirty-five years earlier she had fallen down the steps in her home, injuring her lower back.

On the date of the accident, the weather was clear and mild; the sun had arisen at 6:33 a. m., and was about 20 degrees high at the time of plaintiff's fall.

The door-opening and steps of room no. 5 and the walkway in front were properly constructed, and at the time of this accident, they were properly maintained. There were no defects in or about the door-opening, steps, or walkway. The area was adequately lighted, and there were no obstructions, shadows, shading, nor darkness, which would have obscured the step or walkway, or which would have rendered the same dangerous. Neither was there any dangerous substance upon either the step or the walkway.

The differences in the design, texture, size, arrangement, and color range of the step and walkway [as accentuated by the floor mat and threshold] made the existence and location of the step and walkway readily observable. There was nothing misleading about the arrangement; nor was there anything to create a deceptive optical illusion. The color photos in evidence lend substantial support to the finding that one exercising reasonable care and prudence for his safety would have had no difficulty in observing the difference in levels of the step and walkway. There was nothing inherently dangerous about their construction or arrangement.

This motel and the room in question had been in operation and use for quite a number of years prior to 1961. There was no assertion or proof that there had ever been any prior complaints, trouble or difficulties with reference to the steps or walkway. A clear preponderance of the evidence established that the design and arrangement of the walkway, steps,

and entrances to the rooms at this motel were generally the same as used in the design and construction of motels in the Myrtle Beach area.

The issues raised by the foregoing findings of fact which must be determined by the court are: 1) Was defendant negligent in any particular as shown by the evidence in the case; 2) if so, was such negligence the proximate cause of plaintiff's fall and resulting injuries and damages; and 3) was plaintiff guilty of contributory negligence which was a concurring, contributing cause of her fall?

## CONCLUSIONS OF LAW

■ The court has jurisdiction of the parties and of the subject matter of the action. The substantive law of the state of South Carolina where the accident occurred is controlling upon the issues herein.

■■ The burden of proof is upon plaintiff to prove by the preponderance or greater weight of the evidence that defendant was negligent in at least one or more of the particulars alleged in her complaint or as established by the evidence in the case; that such negligence, if any, was a proximate cause of her fall and her resulting injuries and damages; and the extent and amount of her injuries. In its affirmative plea of contributory negligence defendant has the burden of proof to establish by the same measure of proof that plaintiff was guilty of negligence which concurred in or contributed to her fall, and without which the same would not have occurred.

■■ It is well settled under South Carolina law that one who operates a place of business to which the public is invited such as a motel, store or other similar establishment is not an insurer of the safety of his customers; the relationship is that of invitor and invitee. The owner or operator of such business owes a duty to his customers to exercise ordinary care in designing, constructing, and maintaining the passageways, sidewalks and other parts of his premises which are customarily used by his patrons in a reasonably safe and suitable condition.

Hunter v. Dixie Home Stores, 232 S.C. 139, 101 S.E.2d 262; Bagwell v. McClellan Stores Company, 216 S.C. 207, 57 S.E.2d 257; Bruno v. Pendleton Realty Company, 240 S.C. 46, 124 S.E.2d 580, 95 A.L.R.2d 1333. Attention is also invited to an excellent annotation dealing with injuries to guests using steps or stairs in 58 A.L.R.2d commencing at page 1178, where at page 1180 it is stated:

"An innkeeper is under a duty to see that steps and stairs located upon the premises of his inn are constructed in a reasonable manner in order to avoid injury to a guest using them, but steps or stairs constructed in a manner which is not inherently dangerous, and which conforms with custom and usage will not alone impose liability upon an innkeeper to a guest injured while using them although by reason of such construction a guest is required to exercise a higher degree of care in using them than would be necessary in using steps or stairs constructed in another manner."

■ The doctrine of *res ipsa loquiter* does not apply in this state, and in order for a claimant to recover he must establish actionable negligence on the part of the defendant. Perry v. Carolina Theater, 180 S.C. 130, 185 S.E. 184; Hunter v. Dixie Home Stores, supra; King v. J. C. Penney Co., 238 S.C. 336, 120 S.E.2d 229.

Some of the common law principles of this State which are applicable to the issues raised by the evidence in this case are stated in Bruno v. Pendleton Realty Company, 240 S.C. 46, 124 S.E.2d 580, by the South Carolina Supreme Court as follows:

"It is undisputed that there was a difference between the level of the walkway and the sidewalk. Generally, it is not negligence to maintain under appropriate circumstances, different levels in approaches to places of business. Seal v. Safeway Stores, 48 N.M. 200, 147 P.2d 359. The mere fact that there is a dif-

ference between the levels in the different parts of the premises does not, in itself, indicate negligence unless, owing to the character, location and surrounding condition of the change of level, a reasonably careful person would not be likely to expect or see it. Crocker v. WTAR Radio Corp., 194 Va. 572, 74 S.E.2d 51. The installation of means to accommodate persons using the premises in their passage up and down a grade between different levels does not constitute negligence, unless the owner or occupant has failed to exercise ordinary care in the construction or maintenance of such installation. Cameron v. Small, Mo. 182 S.W.2d 565. So, a step-down or a step-up upon premises does not, in and of itself, constitute negligence. Buck v. Miller Amusement Co., 166 Kan. 205, 200 P.2d 286; 65 C.J.S. Negligence § 81, at page 585. It is also true that where a dangerous condition in premises is latent and of which the owner knew or should have known, and is unknown to invitees, the owner is required to give proper warning in order to relieve himself from liability for injuries incurred by reason thereof. However, one who, with knowledge of the conditions of the premises, goes into danger, he assumes the consequences and, even though there be negligence on the part of the other if the complainant suffer hurt to which his negligence contributed as a proximate cause, without which it would not have occurred, he is barred of recovery. Benton v. United Bank Building Co., 223 N.C. 809, 28 S.E.2d 491, and Bolen v. Strange et al., 192 S.C. 284, 6 S.E.2d 466."

Was there any duty upon defendant to warn plaintiff of any conditions existing at his motel?

The South Carolina Supreme Court in Bruno v. Pendleton Realty Company, supra, quoted with approval the language of the Supreme Court of North Carolina in Benton v. United Bank Building Company, 223 N.C. 809, 28 S.E.2d 491, which is a case factually similar to the instant case, when it stated:

"Any danger incident to the difference in the levels of the two floors necessitating the step down being obvious to one who looked, there was no duty resting upon the defendants to give notice thereof. The law imposes no duty upon one to give notice of a dangerous condition to another who has eyes to see and an unobstructed view of such condition, but fails to take time to see such danger. Generally, in the absence of some unusual condition, the employment of a step by the owner of a building because of a difference between levels is not a violation of any duty to invitees. Where a condition of premises is obvious to any ordinarily intelligent person, generally there is no duty on the part of the owner of the premises to warn of that condition. * * * There is no duty resting on the defendant to warn the plaintiff of a dangerous condition provided the dangerous condition is obvious." [Citations omitted].

Each case of this type must be decided on a mixed question of law and fact, and the final decision must be made upon the particular circumstances of each case. Applying the factual situations herein as determined by the court to the controlling legal principles hereinabove set forth, I am constrained to conclude that defendant was not guilty of any negligence in the construction, maintenance and operation of his motel, which proximately caused or contributed to the injuries and damages sustained by plaintiff as the result of her fall at his motel on March 10, 1961. No inherently dangerous situation was created or maintained by defendant in reference to the walkway, steps and entrance to his motel rooms. The walkway, steps and entrance ways were adequately lighted by the broad open day and sunlight at the time plaintiff fell. There is no creditable evidence in the record to establish that

there was any shade or shadows on the steps and entrance ways of the motel rooms so as to obscure them or make them dangerous on said occasion. There was not sufficient sameness or similarity between the design, construction, color, shade and texture of the steps and the walkway so as to create an optical illusion or a dangerous situation. The differences in elevation, color, design and other variations between the steps and walkway were obvious to one using reasonable prudence and care for his own safety; especially was this true to the plaintiff since she had gone in and out of her motel room on three occasions prior to her fall. The design and construction of the walkways, steps and entrances to the rooms at defendant's motel were similar to those used in other motels and commercial buildings in the Myrtle Beach area.

██ Inasmuch as I have concluded that there was nothing inherently dangerous or deceptive about the steps, walkway and entrance to the room which plaintiff was occupying on this occasion, nor were there any hidden or latent dangers known by defendant but unknown to plaintiff, there was no breach of any duty on the part of defendant by his failure to give timely warning to plaintiff. Neither is there any contention by plaintiff or any showing in the evidence that there was any slippery, greasy or other foreign substance on the threshold, step or walkway which caused or contributed to plaintiff's fall.

██ Even if the court should determine that defendant was in any way guilty of any actionable negligence in his design, construction, maintenance and operation of his motel on this occasion which contributed as a proximate cause to plaintiff's injuries, a strong preponderance of the evidence requires the inescapable conclusion that plaintiff, under all the facts and circumstances as they existed, was herself guilty of negligence which contributed to her own injuries and damages as a proximate cause thereof, and without which the same would not have occurred. It is evident that the difference in elevation between the step from plaintiff's room onto the walkway was reasonably apparent to one exercising due care for his own safety. Plaintiff, who had used these steps on three prior occasions the evening before, should have seen, determined and known about the conditions which existed at the place in question had she looked or taken the time to look. Plaintiff's fall was undoubtedly precipitated by her inattentiveness as she walked from the door of her motel room, which caused her to lose her footing or balance. Thus, under any view of the evidence, plaintiff is barred from recovery. It is, therefore,

Ordered that the complaint in this action be dismissed and that judgment be entered for defendant.