## 1500

William C. CROCKER, Respondent v. Reverend Ernest L. BARR, Billy Boggs, Larry Brown, Emory Brown, Henry Manning, Jr., Wayne Whidby, Reverend Virgil Manning, Thomas Stroud, Wendel Boggs, James B. Reynolds, Sandy Hilly, Melvin Crider, and Howard Powell, individually as present or former board members of the Calhoun Falls Pentecostal Holiness Church, Appellants.

(397 S.E. (2d) 665)

Court of Appeals

See also, 367 S.E. (2d) 471.

*David B. Betts*, Chapin, *for appellants.*

*Thomas E. Hite, Jr.*, Abbeville, and *Marvin R. Watson*, Greenwood, *for respondent.*

Heard Jan. 17, 1990.

Decided May 7, 1990.

GARDNER, Judge:

This is a premises liability case. Crocker, a 35-year member of Calhoun Falls Pentecostal Holiness Church, an unincorporated church, brought this action against Reverend Virgil Manning, a former church pastor, Reverend Ernest Barr, the church pastor, and the other named defendants as members of our former members of the Board of Deacons and trustees of the church. Crocker received injuries as the result of a fall from the attic of the church.

Prior to trial it was stipulated that no judgment would be recorded against any defendant, and plaintiff's recovery

would not exceed the amount of liability insurance coverage ultimately declared applicable to any defendant, if any. The jury awarded Crocker $300,000 actual damages. We reverse and remand.

## ISSUE

The dispositive issue is whether the trial judge erred by denying defendants' motion for directed verdict and judgment n.o.v. on the grounds that the plaintiff and defendants had equal ownership of the church property along with all the other members and, therefore, the defendants had no duty to find, repair or warn of the latent defect, i.e., the unnailed rafters in the unfloored portion of the attic.

## FACTS

Crocker volunteered to maintain the sound system of his church. The attic of the church had been partially converted to a choir room. On each side of the choir room was a floored space referred to as the sound room, accessed by pull stairs. On the night he was injured, Crocker, while waiting for another church member to help him with the sound system, decided to remove some wire not connected to the sound system. In so doing he used the rafters as a handrail and ventured into the unfloored section of the church attic where he fell through the ceiling joists onto the floor below. He alleged that his fall was caused by an unnailed ceiling rafter, which had been cut during the construction of the choir room and had not been secured to the outside wall of the choir room.

The defendants alleged affirmatively that the complaint should be dismissed because of Crocker's failure to allege that the defendants were owners of and had possession and control of the church property.

The trial judge submitted the case to the jury upon the sole theory of premises liability to invitees. Crocker entered no objection to this.

The defendants made a timely motion for a directed verdict on the grounds, *inter alia,* that the plaintiffs and defendants had equal ownership and control of the property and that, therefore, no defendant had a duty to find and repair or warn of a latent, hidden construction defect. The post-verdict motion for judgment n.o.v. included this ground.

There is no testimony of record relating to a breach of duty owed Crocker by any individual defendant; however, there is testimony of record from several defendants to the effect that the testifying witness believed that Crocker should be compensated and that the church board as a body had the responsibility of inspecting the church. With respect to this anomaly, we find of record the following colloquy:

MOTIONS

MR. HITE: Basically, Your Honor, we are not interested in a judgment or collecting any money from any of these people. We never have been. This insurance company, our position is that they owe whatever money the jury awards, if any, and that's why we entered into this agreement. We would like Your Honor to approve this and enter it into the record.

MR. BETTS: We would like your approval of it, Your Honor.

THE COURT: All right with me.

MR. BETTS: We would make it part of the record, Your Honor.

(Agreement marked Court's Exhibit 1.)

MR. BETTS: Your Honor, based on this agreement, I would like to renew the motion I made at the beginning of the trial concerning questions to any parties regarding "Don't you think the man should be compensated." The obvious answer is that some people want compensation for this man. We would avoid my, one, having to object to that. It's clear that compensation, if there is going to be any, is coming from an insurance company. That question has been asked in virtually every disposition of the Defendants. They're on the stand, I don't think they should be forced to say, "Yes, I'd like to see him compensated." They'd love the insurance company to have to write a check. The follow-up of that question is, "Do you feel like you should personally pay for anything you have done?" *The answer to that was no.* I think that would put the very issue back before the jury, and I'd like to avoid it and avoid the necessity of making my objection in front of the jury. We request that you rule that no questions should be asked, either "Do you think he should be compensated," or

"Do you think you should personally pay." [Emphasis ours.]

THE COURT: (To Mr. Hite:) What do you want to say about that?

MR. HITE: Your Honor, I think we have a right to ask the Defendants if they think they are in fact negligent, which they have admitted. They have also testified they feel like that based on their lack of due care, they think the Plaintiff should be compensated. I think under the law they clearly can answer my question. Now, if Mr. Betts wants to open the door to insurance and follow up with "Do you think you should personally pay out of your pocket," and have them answer, "No, the insurance should pay," That's his right. I think clearly we have a right to ask the Defendants about this, too.

THE COURT: I'll rule on it when it comes up.

We later address this anomaly.

## DISCUSSION

Although Crocker alleged a breach of duty owed him by the defendants because of the church bylaws describing the duties of the Board of Trustees, and offered evidence to support this proposition. Crocker made no objection to the trial judge's charge which limited the plaintiff's theory to that of premises liability to an invitee.

The failure to object to a charge makes the charge the law of the case. *See Mickle v. Blackmon*, 255 S.C. 136, 141-142, 177 S.E. (2d) 548, 549-550 (1970). Additionally, juries are limited in their verdicts to the theories charged by the trial judge. *Mishoe v. Atlantic Coast Line R. Co.*, 186 S.C. 402, 417, 197 S.E. 97, 104 (1938). When the jury disregards the instructions of the court, the verdict cannot be sustained. *Southern Cotton Oil Co. v. Batesburg Cotton Oil Co.*, 99 S.C. 71, 73, 82 S.E. 985, 985 (1914).

An invitee is "one who enters upon the premises of another at the express or implied invitation of the occupant, especially when he is upon a matter of mutual interest or advantage." *Parker v. Stevenson Oil Co.*, 245 S.C. 275, 280, 140 S.E. (2d) 177, 179 (1965).

In the case before us, the land on which the church building is located was deeded to Clifton William Scott, Larry Brown

(a defendant herein) and Floyd D. Parnell, as trustees for Pentecostal Holiness Church of Calhoun Falls, South Carolina, their successors and assigns. The statement of the case contains an agreement that legal title is held "in trust by the successive trustees for the benefit of all members of the church association and that [n]o defendant had any more or less ownership than any other member of the unincorporated church association including the Plaintiff. No individual defendant had exclusive possession or control of the Church premises."

We hold that this agreement vests all members of the church, including the parties to this action, with equal ownership of the equitable title to the property including the right of occupancy and possession. Crocker, the defendants and other members of the church are cotenants with respect to the right of possession or occupancy of the church premises. This holding is based upon the agreement of the parties and is consistent with the holding of the court in the case of *Turbeville v. Morris*, 203 S.C. 287, 26 S.E. (2d) 821 (1943). There the court held that by giving the trustees for the Methodist Episcopal Church, South a deed of realty to hold in trust for the church as church property, the grantor intended the beneficiary to be the local congregation of the church, for use as a place of worship according to the rules and discipline of the Methodist Church. 203 S.C. at 299, 26 S.E. (2d) at 825.

The trial judge gave no instruction to the jury about the defendant church members' duty to other church members arising from their possession and control of church property.

The sole jury charge given by the trial judge relating to a duty owed to the plaintiff is the following:

I instruct you further that a person who is invited onto the premises of another by the express or implied invitation of that person, the occupant of the property, is one who has—As I said, a person who is an invitee, is classified as an invitee under the law, is one who has been expressly or impliedly invited onto the premises of another when he is there upon mutual interest or advantage to both parties.

I instruct you that an owner of property is not an insurer of the invitee's safety, but he has a duty to exercise due care to keep the premises in reasonably safe condition and to give warning of any hidden defects or perils of

which he has knowledge or should have, in the exercise of reasonable care, known about.

I instruct you further where a person who goes on property under the classification of an invitee, as I just mentioned and defined for you, the occupier of the premises ordinarily owes him not only the duty not to injure him by unreasonably dangerous conduct while he is on the premises, but also owes the duty to use reasonable care to discover unreasonably dangerous conditions on the premises and either put the premises in a reasonably safe condition for the use and manner consistent with the purpose of the invitation to come on the property or to warn him of dangers which he knew or should have known about.

An invitee is owed the duty by the owner or occupier of premises of the exercise of reasonable or ordinary care for his safety and is liable for injury resulting from the breach of this duty. The degree of care must be commensurate or equal to the particular circumstances involved, including the age and capacity of the person who's been invited on the premises. This duty is an active or affirmative duty. It includes refraining from any act which may make the invitee's use of the premises dangerous or result in injury to him.[1]

The trial judge gave no instruction about who owned the church property. The stipulation of the parties, therefore, is controlling.

We hold that Crocker did not enter upon the land of another but he entered upon land which he held, for purposes of this case, as a tenant in common with the other members of the church. *See G. Bogert, Law of Trust and Trustees* § 191 (Rev. Second ed. 1979). Each church member, including the plaintiff and defendants, under the stipulation and agreement quoted,

---

[1] We concur with this charge insofar as it relates to premises liability to invitees. *See e.g., Anderson v. Winn-Dixie Greenville, Inc.*, 257 S.C. 75, 184 S.E. (2d) 77 (1971); *Parker v. Stevenson Oil Co.*, 245 S.C. 275, 140 S.E. (2d) 177 (1965); *Bruno v. Pendleton Realty Co., Inc.*, 240 S.C. 46, 124 S.E. (2d) 580 (1962); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *Prosser and Keeton on the Law of Torts*, § 61 at 425 (5th ed. Lawyers ed. 1984); Annotation in 8 A.L.R. (3d) 6, 35 (1966); Annotation in 8 A.L.R. (3d) 873 (1973).

enjoyed the right to the possession of the premises. In effect the possession of one tenant under the circumstances of this case, is the possession of all. *See Wells v. Coursey,* 197 S.C. 483, 488, 15 S.E. (2d) 752, 755 (1941).

Crocker was one of the persons in possession of the premises involved and, for that reason, could not be an invitee. The simple issue then is whether the defendants, who owned the right of possession of the property as cotenants with Crocker and the other members of the congregation, owed a duty to their cotenants to inspect the unfloored portion of the attic to determine if there were any loose rafters.

Crocker cites no authority for the proposition that one cotenant owes a duty to his cotenant to inspect the premises for latent defects. And after thorough research, we find none. Since premises liability is bottomed upon the right of possession and control, we hold that a cotenant does not owe his cotenant a duty to so inspect for latent defects. We also hold that Crocker was not an invitee but rather a cotenant to the extent mentioned.

Moreover, it is agreed by the statement of the case that (1) it is unknown who cut the rafters, (2) there is no evidence that such condition was discovered by anyone until after Crocker's fall, (3) no one had been entrusted to inspect the church attic for safety, and (4) the defendant pastors of the church did not expect any of the defendants to do more than "face value" inspections of the property to determine maintenance needs. We hold under these agreements there is no evidence of a breach of duty on the part of any individual defendant. "One cannot recover damages of another unless a failure to discharge some duty to the injured party is shown." *Dunbar v. Charleston & W.C. Ry. Co.,* 211 S.C. 209, 216, 44 S.E. (2d) 314, 317 (1947). We hold that the defendants under the facts of this case individually owed no duty to Crocker to inspect the rafters over the unfloored portion of the attic of the church to determine whether the rafters could be safely used as a handrail.[2]

---

[2] The record before us reflects that Crocker agreed with the defendants that no judgment would be entered against an individual defendant. The record also reflects tha the defendants cooperated with Croker to the extent

## CONCLUSION

The trial judge gave no instructions pertaining to possible duties assumed by defendants as members of the Board of Deacons of the church. We hold the jury in reaching its decision was confined to the theories of liability contained in the jury charge. We also hold that Crocker was not an invitee but rather a cotenant to the extent mentioned. Based upon the law relating to premises liability and upon the agreed upon facts of this case, we hold that none of the church members, including the defendants of this case, owed a duty to Crocker to inspect the unfloored portion of the attic and to warn Crocker. We therefore reverse the appealed judgment and remand the case with instructions to enter judgment in accordance with this decision.

Reversed and remanded.

SANDERS, C.J., concurs.

GOOLSBY, J., concurs in separate opinion.

GOOLSBY, Judge (concurring):

I concur fully in the majority's opinion; however, I have serious doubts concerning whether the circuit court had subject matter jurisdiction over the case once the parties agreed prior to trial that "[t]he Plaintiff [would] not record, execute or otherwise attempt to collect any judgment . . . obtain[ed] against any one or more of the . . . defendants. . . ."

Under Rule 58(a) of the South Carolina Rules of Civil Procedure, "[a] judgment is effective only when . . . set forth and entered in the record." Thus, if the parties agree in advance of a trial that any judgment against a defendant would not be entered on the record, and therefore would be ineffectual if obtained, how can there any longer be a justiciable controversy for the court to entertain? *See Bayne v. Bass*, 302 S.C. 208, 394 S.E. (2d) 726 (Ct. App. 1990) (a final decree becomes

---

of admitting group liability and with almost the same breath, denying that any defendant as an individual breached a duty owed to Crocker. Premises liability on the part of the individual defendants cannot be sustained under the premises (1) of the agreement not to enter judgment and (2) the apparent agreement to admit group liability but to deny individual liability.

effective only when it has been delivered by the judge to the clerk of court for the clerk to file as the order in the case); 46 Am. Jr. (2d) *Judgments* § 158 at 418 (1969) ("[I]t is sometimes specifically provided by statute or rule of court that a judgment is ineffectual until it is entered . . . and that a judgment is not rendered before it is reduced to a journal entry, or before it is put in writing and entered as a judgment."). Where are the adverse legal interests necessary for a case or controversy? *See Wallace v. City of York*, 276 S.C. 693, 694, 281 S.E. (2d) 487, 488 (1981) (the function of a court is "to decide actual controversies injuriously affecting the rights of some party to the litigation."); *Power v. McNair*, 255 S.C. 150, 177 S.E. (2d) 551 (1970) (the parties cannot by consent confer jurisdiction on the court to render a declaratory judgment); *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 99 S. Ct. 2301, 60 L. Ed. (2d) 895 (1979) (the basic inquiry to determine whether there exists a case or controversy is whether conflicting contentions of the parties present a real controversy between parties having adverse legal interests).