531 S.E.2d 535

**H.P. LARIMORE, Appellant,**

v.

**CAROLINA POWER & LIGHT and
Thad Williams, Respondents.**

No. 3152.

Court of Appeals of South Carolina.

Heard March 7, 2000.
Decided April 17, 2000.
Rehearing Denied July 22, 2000.

440

Eugene A. Fallon, Jr. and H. Thad White, Jr., both of Fallon Law Firm, of Florence, for Appellant.

Hugh L. Willcox, Jr., of Willcox, Buyck & Williams; and Louis D. Nettles, of Nettles, McBride & Hoffmeyer, both of Florence, for Respondents.

GOOLSBY, Judge:

H.P. Larimore brought this action against Carolina Power & Light (CP & L) and Thad Williams for injuries he received when installing vinyl siding at Williams' home. Larimore appeals the trial court's reduction of the verdict for his comparative negligence, the grant of a directed verdict to Williams, and the court's failure to give a proposed jury charge. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Williams hired Larimore to add vinyl siding to his new home that was under construction. Larimore was instructed to add vinyl siding primarily under the porches and around

the eaves, gables, and vents of the home. He began work at the site on or about April 16, 1992.

On April 16, 1992, CP & L employees arrived to install underground utility lines to the home to provide it with electricity. CP & L dug a trench from the road across the property to the meter in order to bury the underground cables. The trench was 150 feet long, 2 to 3 feet deep, and 6 inches wide. Larimore was at the site when CP & L dug the trench and was aware of its presence.

After laying the underground electrical lines, CP & L employees refilled the trench with soil, and attempted to pack it down using a "ditch witch" that had been used to dig the trench. According to the specifications and procedures followed by CP & L, a mechanical tamp should have been used to compact the soil into the excavated area to prevent settling of the soil over time.

Decimus Barbot, Larimore's expert witness, testified the ditch witch was not designed to compact soil and actually compacted only the top few inches of the trench. He further testified the ditch witch does not generate enough pressure to compact soil and, in this case, where the trench was only 6 inches across and the wheel base of the ditch witch was 12 inches wide, no pressure could really be applied to the trench itself. By using the ditch witch instead of a mechanical tamp to compact the trench, the soil was subject to settling.

Several days after CP & L dug the trench, including the morning of April 20, 1992, it rained. The soil covering the trench settled several inches, forming a crust over the top of the trench, while the earth underneath settled even more. Larimore noticed it had rained enough to form puddles on the property.

On April 20, 1992, Larimore was standing about 8 to 10 feet from Williams' home as he walked around inspecting the gables. According to Larimore, he stepped on the dirt covering the trench as he was looking up at the gables. The trench caved in and fractured his right hip.

Larimore filed this action against CP & L and Williams seeking damages for his injuries. At trial, Williams moved for a directed verdict, asserting he did not have knowledge of a

problem on the site which would pose a danger to the subcontractors. Williams asserted he was not responsible for warning Larimore of an open and obvious condition. The trial court granted Williams' motion for a directed verdict, and the matter proceeded with CP & L as the remaining defendant.

The jury returned a verdict in favor of Larimore but found that he was 50 per cent negligent. The jury also awarded Larimore $5,000 in punitive damages.

## I. Reduction of Verdict for Larimore's Comparative Negligence

Larimore contends once the jury determined CP & L's conduct was reckless, willful, or wanton, it should not have been compared with his simple negligence.

The trial court instructed the jury that it could award punitive damages to Larimore if it found CP & L had committed "wanton, willful, malicious, or conscious wrongdoing."

After the jury returned its verdict of actual and punitive damages and found Larimore 50 per cent comparatively negligent, a discussion ensued among the trial court and counsel for both parties as to the proper method for calculating the reduction for Larimore's comparative negligence. At issue was whether to reduce just the actual damages or both the actual and punitive damages by 50 per cent. Larimore's counsel stated he did not believe Larimore's negligence should have any effect as far as the punitive damages award. No other objection or issue was raised concerning the jury's verdict. The trial court subsequently entered a written judgment which reduced Larimore's actual damages of $25,898.34 by 50 per cent to $12,949.17, and awarded him the full amount of punitive damages, $5,000, for a total judgment of $17,949.17. There is no Rule 59, SCRCP motion challenging the calculation of the judgment in the record on appeal.

On appeal, Larimore contends that because the jury awarded him punitive damages, in effect finding CP & L was reckless, willful, or wanton, no portion of the jury's verdict should be reduced for his simple negligence under the comparative negligence doctrine. This issue was not raised to and

ruled upon by the trial court. Accordingly, it is not properly before this court for review.[1]

## II. Directed Verdict as to Thad Williams

 Larimore next argues the trial court erred in granting a directed verdict to Williams. We disagree.

 The trial court may properly grant a motion for a directed verdict where only one reasonable inference can be drawn from the evidence.[2] In deciding a motion for a directed verdict, all inferences must be viewed in the light most favorable to the nonmoving party.[3]

 Williams, as the property owner, owes a duty to those on his property commensurate with their status.[4] South Carolina recognizes four classes of persons present on the property of another: adult trespassers, invitees, licensees, and children.[5] The level of care owed is dependent upon the class of the person present.[6] Because Larimore was a business visitor invited to enter or remain on the property for a purpose directly or indirectly connected with Williams, Larimore was an invitee.[7]

 "The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the

1. *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997) (issue must be raised to and ruled upon by the trial court to be preserved for appellate review).

2. *Adams v. G.J. Creel & Sons*, 320 S.C. 274, 465 S.E.2d 84 (1995).

3. *Taylor v. Medenica*, 324 S.C. 200, 479 S.E.2d 35 (1996).

4. *See Landry v. Hilton Head Plantation Prop. Owners Ass'n*, 317 S.C. 200, 452 S.E.2d 619 (Ct.App.1994) (a landowner's duty to maintain in a reasonably safe condition his or her land depends upon the person's status while on the land).

5. *Id.*

6. *Id.*

7. *See Wilson v. Duke Power Co.*, 273 S.C. 610, 258 S.E.2d 101 (1979) (person working on premises of owner for benefit of owner is considered invitee).

breach of such duty."[8] The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge.[9] The degree of care required is commensurate with the particular circumstances involved, including the age and capacity of the invitee.[10]

In moving for a directed verdict, Williams argued that the trench was an open and obvious condition on the property and, as such, Williams owed no duty to warn Larimore of the condition. The trial court agreed and directed a verdict in Williams' favor. Larimore does not appeal the trial court's ruling that the danger was open and obvious; hence, it is the law of the case.[11]

A landowner generally does not owe a duty to warn others of open and obvious conditions on the property.[12] Our supreme court, however, held in *Callander v. Charleston Doughnut Corp.*[13] that a landowner may still be liable for

---

8. *Israel v. Carolina Bar–B–Que, Inc.*, 292 S.C. 282, 289, 356 S.E.2d 123, 128 (Ct.App.), *cert. denied,* 293 S.C. 406, 360 S.E.2d 824 (1987) (citation omitted).

9. *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 406 S.E.2d 361 (1991).

10. *Henderson v. St. Francis Community Hosp.*, 303 S.C. 177, 399 S.E.2d 767 (1990).

11. *See Town of Mt. Pleasant v. Jones*, 335 S.C. 295, 516 S.E.2d 468 (Ct.App.1999) (an unappealed ruling becomes the law of the case, and the appellate court must assume the ruling was correct). Williams also moved for directed verdict on the grounds that if the defect were latent, Larimore failed to establish Williams knew or should have known about the defect. We need not address any issues involving this ruling, as Larimore fails to appeal any issue relating to that finding of fact. Accordingly, any issues relating to that ruling are not preserved for our review. *See* Rule 207(b)(1)(B), SCACR (no point will be considered which is not set forth in the statement of the issues on appeal); *Wilder Corp. v. Wilke*, 330 S.C. 71, 497 S.E.2d 731 (1998) (issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).

12. *Meadows v. Heritage Village Church & Missionary Fellowship, Inc.*, 305 S.C. 375, 409 S.E.2d 349 (1991).

13. 305 S.C. 123, 406 S.E.2d 361 (1991).

injuries suffered from an open and obvious defect if the landowner should have anticipated the harm.[14]

 Larimore argues the rule in *Callander* requires submission of William's' liability to the jury in his case. We disagree.

In *Callander*, an elderly customer fell when he visited a crowded Krispy Kreme store in Charleston and backed up to sit on a stool that lacked a rounded seat cushion. Our supreme court adopted the Restatement (Second) of Torts § 343 A, which states:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.[15]

We believe *Callander* is inapposite here. In *Callander*, the owner admitted knowing of the condition for over two months and had in fact placed a sign on the broken stool warning customers of the condition. At the time of the accident, however, the sign was missing and had not been replaced. Moreover, the restaurant, open to the public at large, was often crowded and often visited by senior citizens who frequently backed onto the stools in order to sit down. Based on the owner's knowledge of the defect, the length of time the defect existed, the owner's previous warning to the patrons of the danger, the restaurant's frequent visitation by senior citizens, and the owner's knowledge that his customers frequently backed onto the stools, the supreme court concluded that a jury question existed as to whether the harm should have been anticipated by the owner.

In contrast to *Callander*, Williams had no knowledge of the defect. Despite the fact the defect was open and obvious to

---

14. *Id.*

15. Restatement (Second) of Torts § 343A (1965). Comment f.to section 343A states in part: "Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A cmt. f (1965).

those on the construction site, Larimore failed to present any evidence that Williams had any knowledge of the defect's existence prior to the accident. Because Williams had no knowledge of the defect's existence, it would be impossible for him to anticipate any harm that might result from it. We do not read section 343A of the Restatement to require landowners to anticipate harm from an open and obvious condition from the moment of the condition's creation. To impose liability under such a theory would make landowners insurers of their invitees' safety; it is well-established in South Carolina that they are not.[16]

Furthermore, as previously noted, the degree of care required by a landowner is commensurate with the particular circumstances involved, including the age and capacity of the invitee. In the present case, Larimore was an experienced contractor familiar with construction sites and the way they operated. He testified he usually conducted a visual inspection of the construction site for the safety and protection of his own employees. Additionally, Larimore knew of the trench's existence and location, as he was present the day CP & L dug the trench and placed the electrical lines. Accordingly, we agree with the trial court that there is no basis to hold Williams liable as a landowner under this situation.

Larimore also claims Williams, acting as a general contractor, is liable under the theory of premises liability. In his brief, Larimore does not, however, argue any other potential theory of liability for a general contractor.[17]

---

16. *See generally Moore v. Levitre*, 294 S.C. 453, 365 S.E.2d 730 (1988) (merchant is not an insurer of its customer's safety); *House v. European Health Spa*, 269 S.C. 644, 239 S.E.2d 653 (1977) (business owner is not an insurer of an invitee's safety); *Bruno v. Pendleton Realty Co.*, 124 S.E.2d 580, 240 S.C. 46 (1962) (owner of shopping center is not an insurer of safety, but must exercise reasonable care); *Wintersteen v. Food Lion, Inc.*, 336 S.C. 132 518 S.E.2d 828 (Ct.App.1999) (merchant is not an insurer of its customer's safety); *Pryor v. Northwest Apartments, Ltd.*, 321 S.C. 524, 469 S.E.2d 630 (Ct.App.1996) (landlord is not an insurer of every tenant's safety).

17. These theories may include but are not limited to negligent hiring, negligent supervision, violations of OSHA regulations dealing with workplace safety, and agency principles.

 Under a premises liability theory, a contractor generally equates to an invitor and assumes the same duties that the landowner has, including the duty to warn of dangers or defects known to him but unknown to others.[18] A general contractor, however,

> is not liable to an invitee for an injury resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care. The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.[19]

Accordingly, Williams, in both his role as landowner and general contractor, owed no duty to warn Larimore of the open and obvious defect.

### III. Failure to Give Proposed Charge

 Larimore contends the trial court erred in failing to charge his proposed Jury Charge No. 24, which states:

> Our courts have established a high degree of care for the utility companies in maintaining wire lines. When utility companies maintain wire lines on or over private premises, they are required to use care commensurate with the dan-

---

**18.** *See Hall v. Moveable Offshore, Inc.,* 455 F.2d 633 (5th Cir.1972) (duty of general contractor is similar to that owed by owner to his invitees); *Breeden v. Hardy Corp.,* 562 So.2d 159 (Ala.1990) (general contractor is an invitor); *Souza v. Pratico,* 245 Cal.App.2d 651, 54 Cal.Rptr. 159 (1966) (an employee of a subcontractor is an invitee of the general contractor); *Thill v. Modern Erecting Co.,* 272 Minn. 217, 136 N.W.2d 677 (1965) (a general contractor in charge is regarded as the possessor of land); *Weiser v. Bethlehem Steel Corp.,* 353 Pa.Super. 10, 508 A.2d 1241 (1986) (contractors and subcontractors owe employees of subcontractors the same standard of care as a landowner owes to a business visitor); 62 Am.Jur.2d *Premises Liability* § 457 (1990) (a subcontractor is an invitee as to a general contractor).

**19.** *Breeden,* 562 So.2d at 160 (citations omitted). *See also Souza,* 54 Cal.Rptr. at 163 ("As a result of such invitor-invitee relationship, the general contractor exercising supervision ... owes the employees of a subcontractor a common-law duty to exercise ordinary care to provide them with a reasonably safe place to work or to warn them of dangers which are not obvious ... [but] is not liable to [the invitee] for an injury resulting from a danger which is obvious or should have been observed in the exercise of ordinary care.").

ger to see that no injury comes to persons rightfully in proximity to them and who are guilty of no wrong.

The care required is more than mere mechanical skill; it includes foresight with regard to reasonably probable contingencies.

The trial court declined to give the proposed charge, stating, "I think twenty-four would be of a maintenance and not installation. I think we are talking about installation and not maintenance in this case."

■■■ When instructing the jury, the trial judge is required to charge only the current and correct law of South Carolina.[20]

■■■ "To warrant reversal for refusal to give a requested instruction, the refusal must have not only been erroneous, but prejudicial as well. Refusal to give a properly requested charge is not error if the general instructions are sufficiently broad to enable the jury to understand the law and the issues involved." [21]

We find no reversible error in the trial court's failure to give the proposed instruction under the circumstances present here. At issue was not CP & L's duty to maintain power lines, but the proper procedure for their installation. Further, the charge primarily concerns the maintenance of overhead lines as opposed to underground lines. Upon reviewing the trial court's charge as a whole, we discern no prejudice to Larimore.

**AFFIRMED.**

CONNOR and HOWARD, JJ., concur.

■■■

---

**20.** *McCourt v. Abernathy*, 318 S.C. 301, 457 S.E.2d 603 (1995). *See also Fernanders v. Marks Const. of South Carolina, Inc.*, 330 S.C. 470, 499 S.E.2d 509 (Ct.App.1998) (a trial judge is required to charge only the current and correct law; ordinarily, a trial judge has a duty to give a requested instruction if it correctly states the law applicable to the issues and evidence); *Brown v. Smalls*, 325 S.C. 547, 481 S.E.2d 444 (Ct.App.1997) (a trial judge is required to charge the current and correct law applicable to the issues presented).

**21.** *McCourt*, 318 S.C. at 306, 457 S.E.2d at 606 (citations omitted).