THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING   EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Rhonda Hendrix, Individually and as the duly appointed Guardian Ad Litem of Haley Hendrix, a minor under the age of fourteen years, Appellant,
 
 
 

v.

 
 
 
 Duke Energy Corporation, Mike Burton, Individually and d/b/a Burton Plumbing and Electrical Service, Burton Plumbing and Electrical Service, Inc., Recreational Factory Warehouse of Greenville, Inc., and Tri-State Installations, Inc., Defendants,
 Of whom Duke Energy Corporation is the, Respondent.
 
 
 

Appeal From Oconee County
 James C. Williams, Jr., Circuit Court Judge

Unpublished Opinion No. 2006-UP-022
Heard December 6, 2005  Filed January 12, 2006

AFFIRMED

 
 
 
 Eugene Charles Fulton, Jr., of Columbia and J. Edward Bell, III, of Sumter, for Appellant.
 James W. Logan, Jr., of Anderson, for Respondent.
 
 
 

PER CURIAM:  Rhonda Hendrix brought this negligence action against Duke Energy Corporation and others after her daughter suffered an electrical shock when she touched a dock Hendrix owned at Lake Keowee.  Hendrix alleged Duke was negligent in failing to properly oversee the permitting of the dock.  The circuit court granted Dukes motion for summary judgment, finding as a matter of law that Duke owed no duty of care in this regard and that, in any event, the claim was barred by the South Carolina Recreational Use Statute.  Hendrix appeals.  We affirm.
FACTS
Duke owns Lake Keowee in Oconee County and operates it pursuant to a license granted by the Federal Energy Regulation Commission (FERC) covering the Keowee-Toxaway Project.  In 1996, FERC issued an Order Amending License to Duke stating the purpose of the amendment was to reduce some administrative burden on [Duke] by allowing it to authorize certain minor uses of the property without seeking prior approval from FERC.  Among other things, Duke was authorized to grant permission for the use of boat docks that were intended to serve single-family dwellings.    
The order contain[ed] conditions designed to ensure that any authorized use . . . permitted . . . is consistent with the project license and the protection of the projects scenic, recreational, and other environmental values.  Duke was required to ensure, to the satisfaction of the Commissions [FERCs] authorized representative, that the uses and occupancies for which it grants permission are maintained in good repair and comply with applicable State and local health and safety requirements.  The order further provided as follows:  

 [Duke] shall . . . have continuing responsibility to supervise and control the use and occupancies for which it grants permission, and to monitor the use of, ensure compliance with the covenants of the instrument of conveyance for, any interests that it has conveyed under this article.  If a permitted use and occupancy violates any condition of this article or any other condition imposed by [Duke] for protection and enhancement of the projects scenic, recreational, or other environmental values, or, if a covenant of a conveyance made under the authority of this article is violated, [Duke] shall take any lawful action necessary to correct the violation.  

Management of Lake Keowee is also controlled by Dukes own Shoreline Management Guidelines.  The purpose of the Guidelines is to provide detailed procedures and criteria to regulate activities within reservoirs managed by Duke . . . .  The Guidelines state Lake Management is responsible for the continuous monitoring of activities within the boundaries of Duke reservoirs to ensure activities are consistent with established company policies and license requirements.  
As part of its management of Lake Keowee, Duke conducted inspections of docks built on the lake and issued permits for construction.  Dukes formal permitting process began in 1987 and applied only to future construction; docks built prior to 1987 were grandfathered in unless the dock was in such bad repair that it was a navigational hazard.  Duke did not check electrical power to docks and has no guidelines or rules regulating electrical power to docks.  Dukes inspections were limited to checking to make sure the dock was safe and not a navigational hazard and making sure the permitee built what they were approved for.  
In 1999, Rhonda Hendrix was the owner of real property abutting Lake Keowee.  Hendrixs property included a dock that extended into Lake Keowee.  A light fixture on the dock connected to electric transmission wires that ran to Hendrixs house.  Sometime prior to 1999, Duke issued a permit for Hendrixs dock.  The trial court noted [t]he Hendrix dock appears to be one of those docks that was already in existence in 1987 and that was issued a tag or permit without an application or inspection.  
In 1998, Hendrix purchased a swimming pool from Recreational Factory Warehouse, which subcontracted the installation to Tri-States Installation, Inc.  Tri-States, in turn, hired a grading contractor to grade the yard prior to installation.  The grading contractor apparently cut some of the electrical wires in the yard.  Someone then spliced the wires back together and left them in the yard.      
In the spring of 1999, Hendrix hired Mike Burton, an electrician, to install an outlet near the pool.  Hendrix informed Burton that her daughter Haley had been shocked at the boat dock about two weeks earlier.  When Burton installed the outlet, he inspected the dock wiring and determined all of the dock wiring needed to be redone as none of that stuff was to code.  Specifically, he noticed that the wires were just exposed and nothing was in conduit.  According to Burton, state code requires installing all electric wires on docks in a flex conduit.  Burton showed Hendrix the wires and advised her that he did not have time to fix them and that she would need to secure the services of another electrician to correct the problem.  
On August 14, 1999, Hendrixs daughter Haley and some friends left the Hendrix dock for a boat outing.  When the boat stalled, Haley jumped out of the boat and swam back to the Hendrix dock.  When she touched the dock, she received an electric shock and was rendered unconscious.  A neighbor, Alan D. Wheeler, heard screams for help and came over in his boat to help.  When he touched the Hendrix dock, Wheeler was electrocuted.   Haley survived the accident, but suffered severe personal injuries.  
Hendrix filed this action against Duke and others to recover for Haleys injuries, alleging Haley was injured due to faulty installation of the pool and electrical wiring.  As to Duke, Hendrix alleged Duke was negligent and reckless in the management of Lake Keowee and in the inspection and permitting of the Hendrix dock.  
Duke moved for summary judgment, arguing it had no duty of care.  Hendrix alleged a duty of care arose from Dukes status as owner or manager of Lake Keowee, from the FERC license (as amended), or from Dukes own Guidelines.  The trial court ruled as a matter of law that no duty existed and granted Dukes motion for summary judgment.  Hendrix appeals.
STANDARD OF REVIEW
In reviewing the grant of a motion for summary judgment, an appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP.  Ferguson v. Charleston Lincoln Mercury, Inc., 349 S.C. 558, 564 S.E.2d 94 (2002).  Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP; see also Standard Fire Ins. Co. v. Marine Contracting & Towing Co., 301 S.C. 418, 421, 392 S.E.2d 460, 462 (1990).  In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the party opposing summary judgment.  Summer v. Carpenter, 328 S.C. 36, 492 S.E.2d 55 (1997).  
LAW/ANALYSIS
I.  Negligence Liability
On appeal, Hendrix argues Duke owed a duty to exercise reasonable care to inspect the electrical wiring at the Hendrix dock and to discover the allegedly faulty wiring.  
To establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by [the] defendant to [the] plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty.  Bloom v. Ravoira, 339 S.C. 417, 422, 529 S.E.2d 710, 712 (2000).  The absence of any one of these elements renders the cause of action insufficient.  South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc., 289 S.C. 373, 376, 346 S.E.2d 324, 325 (1986).
The court must determine, as a matter of law, whether the law recognizes a particular duty.  Simmons v. Tuomey Regl Med. Ctr., 341 S.C. 32, 39, 533 S.E.2d 312, 316 (2000).  If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law.  Id.
a.  Duty owed as Owner and Manager
Hendrix asserts Duke owed a duty to exercise reasonable care by virtue of its status as the owner and manager of Lake Keowee.    
An owner of land possesses a general duty to warn others of latent hazardous conditions on his land.  Byerly v. Connor, 307 S.C. 441, 443, 415 S.E.2d 796, 798 (1992).  This duty arises from the owners superior knowledge of conditions on the premises within his control.  Id. 
We hold Duke had no duty to warn of faulty electrical wiring on Hendrixs dock because Duke did not have control of the dock and did not have superior knowledge of the conditions on the dock.  
The facts of this case are similar to those of Byerly.  In Byerly, a lake user was electrocuted after diving into Lake Marion from a houseboat that was moored to a dock operated by a lessee (J & J Marina, Inc.) of Santee Cooper.  Either a defectively wired outlet on the dock or a defect in the wiring of the houseboat itself caused the shock.  Id. at 443, 415 S.E.2d at 798.  Our supreme court noted that in typical lease agreements the lessor generally is not responsible for hazardous conditions which thereafter develop or are created by the lessee, in part because the lessor surrenders possession and control of the land to the lessee.  Id.  The supreme court affirmed the trial judges grant of summary judgment to Santee Cooper, concluding the lake owner had no duty to discover and warn of a latent hazardous condition which it did not create and about which it had no knowledge.  Id. at 445-46, 415 S.E.2d at 799.  The court stated Santee Coopers limited undertaking to inspect docks and piers to ensure that they conformed to the structural requirements of the permits issued by Santee Cooper did not include a duty to inspect for a latent hazardous electrical condition at J & J Marina.  Id.  at 445, 415 S.E.2d at 799.
While the appeal now before us does not involve a lease, the analysis is the same.  The key element imposing a general duty on landowners to warn of latent hazardous defects is the landowners presumed superior knowledge based on control and possession of property.  A landowner lacking control and possession does not have the same general duty.  Duke, like the lake owner in Byerly, did not have control of the dock and therefore possessed no superior knowledge of the property.  Accordingly, we hold Duke owed no duty to discover and warn lake users of faulty wiring on Hendrixs dock.          
Categorizing Haley as an invitee does not change the analysis.  Hendrix argues Duke owed Haley a duty to exercise reasonable care because of Haleys status as an invitee.  A landowner has a duty to warn an invitee of latent or hidden dangers of which the landowner has knowledge or should have knowledge.  See, e.g., Callander v. Charleston Doughnut Corp., 305 S.C. 123, 126, 406 S.E.2d 361, 362 (1991).  The invitors liability rests entirely upon his superior knowledge of the danger that caused the invitees injuries.  Larimore v. Carolina Power & Light, 340 S.C. 438, 448, 531 S.E.2d 535, 540 (Ct. App. 2000).  The invitor cannot be held liable, however, if the invitor lacks superior knowledge.  Id.  Thus, even if Haley is determined to be an invitee, Duke owed Haley no duty to warn of the faulty wiring on Hendrixs dock because Duke lacked superior knowledge of the property.
b.  Duty arising from FERC License
Hendrix next contends Duke owed a duty to exercise reasonable care based on the provisions of the FERC license (as amended).  
An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance.  Charleston Dry Cleaners & Laundry, Inc. v. Zurich American Ins. Co., 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).   
We agree with the trial courts conclusion that the general requirements imposed by the FERC license cannot be read to create in Duke a duty to discover and warn of a latent hazardous defect which it did not create and about which it had no knowledge.  The FERC license requires Duke to ensure . . . that the uses and occupancies for which it grants permission are maintained in good repair and comply with applicable State and local health and safety requirements, and imposes on Duke a continuing responsibility to supervise and control the use and occupancies for which it grants permission.  As noted by the trial court, there is no indication the license creates a private right of action, even if Duke failed to meet the licenses conditions.    
Reading the licenses general requirements to create a special duty to inspect dock wiring would make Duke an absolute insurer of the safety of every person who uses or comes in contact with a dock on Lake Keowee, even though Duke does not own, construct, or control such docks.  This was clearly not the intent of the license, and to adopt such a finding would be an unreasonable interpretation of the license.  We conclude the FERC license did not create a duty to Hendrix even if it did result in an obligation to FERC.  Accordingly, we find Duke does not owe dock users a duty of care by virtue of the general requirements contained in the FERC license.[1]     
c.  Duty Arising from Undertaking and by Virtue of Guidelines
Hendrix alleges Dukes own Guidelines and its undertaking to inspect docks on Lake Keowee created in Duke a duty to exercise reasonable care to discover the allegedly faulty wiring on her dock. 
At common law, where there is no duty to act, but an act is voluntarily undertaken, the actor assumes a duty to use due care.  Byerly, 307 S.C. at 445, 415 S.E.2d at 799.  Nonetheless, [t]he concept of a duty in tort liability will not extend beyond reasonable limits.  Huggins v. Citibank, 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003). 
We agree with the trial court that Duke did not undertake to inspect the electrical wiring of the docks on Lake Keowee and, therefore, no act by Duke created any duty to use reasonable care to inspect the docks.  Dukes permitting process only sought to make sure permitted docks were structurally sound and did not create a navigational hazard.  Duke did not check electrical power to docks and had no policies or rules regulating electrical power on private docks.  Under similar facts in Byerly, our supreme court found that the lake owner only undertook a limited duty to use due care to discover structural nonconformity with permits, and that undertaking to inspect for structural conformity did not include a duty to inspect for a latent hazardous electrical condition.  Id., 307 S.C. at 445, 415 S.E.2d at 799.  The evidence shows Duke did not undertake a duty to inspect electrical wiring on the docks, and its permitting process cannot be used to create such a duty.  
II.  The South Carolina Recreational Use Statute
Hendrix next argues the trial court erred in ruling the South Carolina Recreational Use Statute applied so as to limit Dukes liability.  The court stated the statute provided an additional ground for summary judgment beyond the fact that there was no common law duty.  Hendrix argues Duke was grossly negligent, an exception to the statute. 
The purpose of [the Recreational Use Statute] is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.  S.C. Code Ann. § 27-3-10 (1991).  A [r]ecreational purpose includes, but is not limited to, any of the following, or any combination thereof:   . . . swimming, boating, . . . [and] summer and winter sports . . . .  Id. § 27-3-20(c).  
The Recreational Use Statute states an owner of land owes no duty of care to keep the premises safe for entry or use by persons who have sought and obtained his permission to use it for recreational purposes or to give any warning of a dangerous condition, use, structure, or activity on such premises to such persons entering for such purposes.  Id. § 27-3-30.  There are, however, two exceptions as the statute does not limit liability which otherwise exists for (1) grossly negligent, willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity or  (2) injury suffered . . . where the owner of land charges persons who use the property.  Id. § 27-3-60.    
The Recreational Use Statute specifically limits the liability of landowners who make property available to the public for recreational purposes.  Duke falls squarely within the parameters of the Recreational Use Statute because Duke allowed members of the public to use Lake Keowee for recreational purposes (e.g., swimming and boating).  Duke, therefore,  generally owed no duty to lake users to keep the premises safe or to give any warning of a dangerous condition, use, structure, or activity.  See S.C. Code § 27-3-30(a) & (b). 
On appeal, Hendrix asserts Duke falls within the grossly negligent exception to the Recreational Use Statute.  We find there is no evidence to support an allegation that Duke was grossly negligent.  Gross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do.  Richardson v. Hambright, 296 S.C. 504, 506, 374 S.E.2d 296, 298 (1988).  Duke had no duty to inspect dock wiring and committed no intentional act.  Thus, as a matter of law, Duke cannot be found grossly negligent and the trial court correctly found the Recreational Use Statute limits Dukes liability and provides an additional ground supporting summary judgment.[2]   
III.  Punitive Damages 
Hendrix lastly argues the trial court improperly granted summary judgment on her punitive damages claim because a jury could find a conscious failure to exercise due care by Duke.  
In order for a plaintiff to recover punitive damages, there must be evidence the defendants conduct was wilful, wanton, or in reckless disregard of the plaintiffs rights.  McCourt v. Abernathy, 318 S.C. 301, 308, 457 S.E.2d 603, 607 (1995).  A conscious failure to exercise due care constitutes wilfulness.  Id.  
No evidence in the record indicates Duke acted in a wilful, wanton, or reckless manner.  As discussed above, Duke owed no duty of care to discover or warn of faulty wiring on Hendrixs dock.  Accordingly, Duke did not demonstrate a conscious failure to exercise due care, and we find the trial court properly dismissed Hendrixs claim for punitive damages.  
CONCLUSION
Based on the foregoing, we find, as a matter of law, Duke owed no duty of care to lake users to discover or warn of a latent hazardous defect which it did not create and about which it had no knowledge.  The decision of the trial court is
AFFIRMED.
GOOLSBY, ANDERSON, and SHORT, JJ., concur.

[1]  The trial court also found that Hendrix could not rely on the provisions in the FERC license to create a duty in this state court action because 16 U.S.C.A. § 825p (2005) provides violations come within the jurisdiction of the federal courts.  This section provides as follows:

 The District Courts of the United States . . . shall have exclusive jurisdiction of violations of [the Federal Power Act] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by . . . this chapter or rule, regulation, or order thereunder. 

Hendrix disputes the trial courts finding.  She acknowledges that, where FERC seeks to enforce an obligation against a licensee for violating a provision of its FERC license, it must do so in federal court, but argues this does not mean that a plaintiff suing on a state law negligence claim must sue in federal court when he uses the FERC license to establish a duty of care.  Since we have found the FERC license would not, in any event, create a duty in this regard, we need not decide whether it is applicable in state court.  
[2]   Hendrix does not argue on appeal that the second exception regarding the charge of a fee applies in this case.  The trial court ruled that this exception did not apply as Hendrix had made no allegation and no proof that Duke charged a fee for the Plaintiffs recreational use of Lake Keowee or for the Hendrix dock.  Since no challenge is made to this finding, it is the law of the case.  Accordingly, we do not address this exception.