634 S.E.2d 12

**Betty J. HANCOCK, Appellant,**

v.

**MID–SOUTH MANAGEMENT, CO., INC., Respondent.**

**No. 4120.**

Court of Appeals of South Carolina.

Submitted June 1, 2006.

Decided June 12, 2006.

Rehearing Denied Aug. 25, 2006.

132

Samuel M. Price, Jr., of Newberry, for Appellant.

Elizabeth M. Damzell, of Columbia, for Respondent.

WILLIAMS, J.

Betty Jo Hancock brought this negligence action against Mid–South Management Co., Inc. for injuries she received while walking across a parking lot owned by Mid–South. Hancock appeals the circuit court's order granting summary judgment to Mid–South. We affirm.

## FACTS

On November 5, 2001, Hancock and her daughter-in-law, Susan Hancock (Daughter), drove to the offices of *The Newberry Observer*, a local news agency, to pick up a newspaper. After Daughter parked in the Observer's parking lot, Hancock walked toward the Observer's office building and tripped. As a result of her fall, Hancock allegedly suffered physical, emotional, and financial injuries. In April 2004, Hancock brought suit against Mid–South, the owner of the Observer,

alleging Mid–South was negligent in maintaining the parking lot of the Observer.

Mid–South filed a Motion for Summary Judgment, which was heard on May 5, 2005. At the hearing, the parties submitted deposition testimony from Hancock and Daughter, and photographs of the parking lot in support of their respective positions. Hancock's deposition testimony provides she tripped on something that was raised. Hancock testified she tripped on something that "felt like a rock or something to that affect," and that "[i]t was the broken asphalt that I tripped on." However, Hancock also testified she could not remember exactly where she fell.

Daughter, using a photograph of the Observer's parking lot, testified Hancock fell "[r]ight there where things changed" from asphalt to cement. The photographs presented show the Observer's parking lot and an abutting cement walkway. The photographs show a change in elevation at the point the asphalt meets the walkway. The photographs also show that, several feet away from the walkway, portions of the Observer's parking lot are littered with rocks or broken asphalt and cracks.

Also in evidence was an affidavit of Ernestine B. LeCoate, a former employee of the Newberry Publishing Company, the publisher of the Observer. LeCoate's affidavit provides "it was a well known fact to all employees, including deponent, that the parking lot was in a deteriorated condition with potholes . . ." and management was aware of the parking lot's condition.

At the hearing, Mid–South argued summary judgment was required because the only evidence presented establishes Hancock tripped on a change in elevation, where the pavement changes into cement. Hancock argued the evidence indicates Hancock's injuries were caused by broken asphalt.

The circuit court granted Mid–South's summary judgment motion. Hancock filed a Motion for Reconsideration, which was denied. This appeal followed.

## STANDARD OF REVIEW

In reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the

trial court under Rule 56(c), SCRCP. *Nexsen v. Haddock,* 353 S.C. 74, 77, 576 S.E.2d 183, 185 (Ct.App.2002). Summary judgment is proper when it is clear that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* In ruling on a motion for summary judgment, "the evidence and inferences that can be drawn therefrom should be viewed in the light most favorable to the nonmoving party." *Tremont Constr. Co., Inc. v. Dunlap,* 310 S.C. 180, 181, 425 S.E.2d 792, 793 (Ct.App.1992). "If more than one reasonable inference can be drawn from the evidence, the case must be submitted to the jury. However, if the evidence is susceptible of only one reasonable inference, the question is no longer one for the jury but one of law for the Court." *Ward v. Zelinski,* 260 S.C. 229, 232, 195 S.E.2d 385, 387 (1973).

## LAW/ANALYSIS

■ Hancock contends the trial court erred in granting Mid–South's summary judgment motion because the evidence presented demonstrates Mid–South should be liable for Hancock's injuries. Specifically, Hancock argues the trial court erred in finding the Observer's parking lot did not constitute a defective or dangerous condition and Hancock's fall was not caused by an elevation change. We disagree.[1]

■ "A merchant is not an insurer of the safety of his customers but rather owes them the duty to exercise ordinary care to keep the premises in a reasonably safe condition." *Denton v. Winn–Dixie Greenville, Inc.,* 312 S.C. 119, 120, 439 S.E.2d 292, 293 (Ct.App.1993). " 'The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge.' " *Larimore v. Carolina Power Light,* 340 S.C. 438, 445, 531 S.E.2d 535, 538 (Ct.App.2000) (quoting *Callander v. Charleston Doughnut Corp.,* 305 S.C. 123, 406 S.E.2d 361 (1991)). "To recover damages for injuries caused by a dangerous or defective condition on a storekeeper's premises, the plaintiff must show either (1) that the injury was caused by a specific act of

---

1. We note Hancock separately addresses these issues in her brief; however, because we find the issues interrelated, we discuss them accordingly.

the defendant which created the dangerous condition; or (2) that the defendant had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Wintersteen v. Food Lion, Inc.,* 344 S.C. 32, 35, 542 S.E.2d 728, 729 (2001).

"The mere fact that there is a difference between the levels in the different parts of the premises does not, in itself, indicate negligence unless, owing to the character, location and surrounding condition of the change of level, a reasonably careful person would not be likely to expect or see it." *Bruno v. Pendleton Realty Co.,* 240 S.C. 46, 51, 124 S.E.2d 580, 582 (1962). Similarly, " '[a] step-up or step-down in a parking lot does not, in and of itself, constitute negligence.' " *Denton,* 312 S.C. at 121, 439 S.E.2d at 294 (quoting *Bruno v. Pendleton Realty Co.,* 240 S.C. 46, 51, 124 S.E.2d 580, 582 (1962)).

In *Denton,* this court analyzed whether a grocery store was negligent in failing to warn a customer about a cart corral in the store's parking lot. In finding the trial court should have entered judgment notwithstanding the verdict for the grocery store, the court held:

> The corral was not materially different from speed bumps, curbing, or concrete dividers at the head of parking spaces—all of which are commonly found in or along public streets and places to park. Accidents may happen around these structures as they do on steps, escalators, and other raised structures. This does not mean they are unreasonably dangerous or that a person exercising due care would not have them on the premises. They are, in fact, common structures that a person taking reasonable care for his own safety would likely expect and see while on the premises.

312 S.C. at 121, 439 S.E.2d at 294. Thus, the key question in cases involving the determination of whether a raise in elevation in or around a parking lot may be considered a dangerous or defective condition is whether the change in elevation is something "a person taking reasonable care for [his or her] own safety would likely expect and see while on the premises." *Id.*

In this case, the only testimony presented indicates Hancock fell at the point where the pavement and the cement meet. Daughter testified to that effect, and Hancock could

not recall the location of her fall. The photographs of the Observer's parking lot clearly show a change in elevation at the point the pavement and cement meet. In addition, the record provides the change in elevation was clearly visible at the time of Hancock's fall; Hancock's deposition testimony provides no debris obstructed her view of the change in elevation. Based on the facts of this case, we find a person taking reasonable care should anticipate a possible change in elevation where asphalt meets an adjacent walkway. Accordingly, we hold the trial court did not err in finding Hancock failed to demonstrate a dangerous or defective condition caused her fall because the evidence demonstrates Hancock fell on a clear change in elevation that a person taking reasonable care would expect to see.

Moreover, even if the change in elevation amounts to a dangerous or defective condition, Hancock still failed to prove Mid–South could be liable because the elevation change is an open and obvious condition. "A landowner generally does not owe a duty to warn others of open and obvious conditions on the property." *Larimore*, 340 S.C. at 445, 531 S.E.2d at 539. However, a landowner may still be liable for injuries suffered from an open and obvious defect if the landowner should have anticipated the harm. *Callander v. Charleston Doughnut Corp.*, 305 S.C. 123, 125–26, 406 S.E.2d 361, 362–63 (1991). A landowner may expect harm to the visitor from known or obvious dangers when the owner has reason to expect the invitee's attention may be distracted. *See Larimore*, 340 S.C. at 446 n. 15, 531 S.E.2d at 539 n. 15 (citing Restatement (Second) of Torts § 343A (1965)). We find the elevation where the asphalt meets the walkway is an open and obvious condition, and therefore, Mid–South had no duty to warn visitors of the elevation. We also find Mid–South had no reason to anticipate harm to Hancock in this case because the record provides Hancock was not distracted at the time of her fall.

Based on the above, we find the trial court did not err in granting summary judgment to Mid–South. Accordingly, the trial court's decision is

138

AFFIRMED.[2]

KITTREDGE and SHORT, JJ., concur.

---

**2.** We decide this case without oral argument pursuant to Rule 215, SCACR.