681 S.E.2d 909

LANIER CONSTRUCTION COMPANY, INC., Plaintiff,

v.

BAILEY & YOBS, INC., Mike Cupp
and Tami Cupp, Defendants,

of whom Lanier Construction Company, Inc. and
Bailey & Yobs, Inc. are the Appellants,

and Mike Cupp and Tami Cupp are the Respondents.

No. 4580.

Court of Appeals of South Carolina.

Submitted April 22, 2009.
Decided July 1, 2009.
Rehearing Denied Aug. 25, 2009.

Robert J. Thomas, of Columbia, for Appellants.

Damon C. Wlodarczyk, of Columbia, for Respondents.

SHORT, J.

Lanier Construction Company, Inc. (Lanier), a subcontractor, sued its general contractor Bailey & Yobs, Inc. (B & Y) and the homeowners, Mike and Tami Cupp (the Cupps), after its cement truck fell into the Cupps' septic tank while making a cement delivery ordered by B & Y. Lanier and B & Y appeal the circuit court's grant of the Cupps' summary judgment motion. The Appellants argue summary judgment was improper because: (1) the court improperly determined the Cupps did not owe Lanier a duty of care; and (2) evidence supports a finding that the Cupps voluntarily assumed the duty to make the premises safe by marking the septic tank location. Additionally, the Appellants argue the trial court failed to address whether the Cupps assumed a duty of care by agreeing to mark the septic tank location, even after Lanier's Rule 59 motion to alter or amend the judgment. We affirm.

## FACTS

The Cupps hired B & Y as the general contractor to renovate their home. Larry S. Yobs, of B & Y, stated in his deposition that he and Mike Cupp discussed the location of his septic tank, and Mike Cupp offered to mark the location. While the septic tank was never marked, it is undisputed that B & Y knew its location and worked around the septic tank for

three months. This work included receiving a concrete delivery without incident.

Three months after Mike Cupp's and Yobs's conversation, B & Y hired Lanier to deliver concrete. B & Y instructed another subcontractor on the site, who B & Y claimed was aware of the septic tank location, to receive the concrete delivery from Lanier. However, the subcontractor on duty denied B & Y ever informed him of the tank location. Lanier's concrete truck driver stated the subcontractor informed him the septic tank was in the front yard, not in the back yard where he was delivering the concrete. As a result of the confusion, Lanier's concrete truck fell through the Cupps' septic tank, resulting in substantial damage to the truck.

Lanier sued B & Y and the Cupps to recover their damages. The trial court granted the Cupps' motion for summary judgment, finding the Cupps were not liable. Citing *Larimore v. Carolina Power & Light*, 340 S.C. 438, 531 S.E.2d 535 (Ct. App.2000), and *Sides v. Greenville Hospital System*, 362 S.C. 250, 607 S.E.2d 362 (Ct.App.2004), the trial court stated: "Moreover, under South Carolina law, a general contractor 'generally equates to an invitor and assumes the same duties that the landowner has, including the duty to warn of dangers or defects known to him but unknown to others.'" Additionally, the trial court held:

Since [Lanier] in this case was a business invitee of [B & Y], it was [B & Y] who owed the duty to warn of the condition. . . . Here, it is not disputed that the general contractor, [B & Y], invited [Lanier] to the premises and was to supervise the delivery of the concrete. It is not disputed that the Cupps did not know that the delivery was being made and had no supervisory role in the construction being conducted. In addition, it is not disputed that [B & Y] was informed of the septic tank and shown its location. Any breach of duty, if any, in this instance falls on the shoulders of the general contractor and not the owner of the land.

Both Lanier and B & Y filed motions to reconsider, and both were denied. This appeal followed.

## STANDARD OF REVIEW

An appellate court reviews the grant of summary judgment under the same standard applied by the trial court. *David v.*

*McLeod Reg'l Med. Ctr.,* 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006). The circuit court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *Law v. S.C. Dep't of Corr.,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). "A court considering summary judgment neither makes factual determinations nor considers the merits of competing testimony; however, summary judgment is completely appropriate when a properly supported motion sets forth facts that remain undisputed or are contested in a deficient manner." *David,* 367 S.C. at 250, 626 S.E.2d at 5. "At the summary judgment stage of litigation, the court does not weigh conflicting evidence with respect to a disputed material fact." *S.C. Prop. & Cas. Guar. Ass'n v. Yensen,* 345 S.C. 512, 518, 548 S.E.2d 880, 883 (Ct.App.2001).

## LAW/ANALYSIS

### I. Cupps' Duty of Care to Lanier

Lanier argues the trial court erred in granting the Cupps' motion for summary judgment on the basis that the duty of care was exclusively that of B & Y, and by finding the Cupps did not voluntarily assume the duty to make the premises safe by marking the septic tank. Similarly, B & Y contends the trial court erred in ruling the Cupps as landowners owed no duty of care to Lanier as a matter of law, and granting summary judgment when the evidence supports a finding that the Cupps assumed a duty of care by agreeing to mark the septic tank before the construction began and then breached that duty of care by failing to mark the septic tank. We disagree.

The case of *Sides v. Greenville Hospital System,* 362 S.C. 250, 607 S.E.2d 362 (Ct.App.2004), discusses a general contractor's and an owner's premises liability. Dorothy Sides was injured when she fell while visiting her husband at the hospital. *Id.* at 253, 607 S.E.2d at 363. The hospital was undergo-

ing a construction project which included demolition of their current parking lot and pouring new concrete. *Id.* "Sides fell when she suddenly stepped off a curb that she could not see in the darkness." *Id.* After the accident, a hospital employee contacted Sides and informed her that the hospital had problems with the lighting in the parking lot, and they had been meaning to fix the lights. *Id.* Subsequently, Sides sued the hospital, the general contractor, and the subcontractor responsible for site preparation and construction. *Id.* at 253–54, 607 S.E.2d at 363–64. All three defendants moved for summary judgment. *Id.* at 254, 607 S.E.2d at 364. The trial court denied the hospital's motion, but granted the general contractor's and subcontractor's motion. *Id.* Additionally, the trial court denied Sides's motion to reconsider. *Id.* In discussing the contractors' responsibilities, this court stated:

A property owner owes an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety and is liable for injuries resulting from any breach of such duty. The property owner has a duty to warn an invitee only of latent or hidden dangers of which the property owner has or should have knowledge. A property owner generally does not have a duty to warn others of open and obvious conditions, but a landowner may be liable if the landowner should have anticipated the resulting harm.

"Under a premises liability theory, a contractor generally equates to an invitor and assumes the same duties that the landowner has, including the duty to warn of dangers or defects known to him but unknown to others." No contractor liability exists, however, for injuries resulting from dangers that were obvious or that should have been observed in the exercise of reasonable care. "The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries." "If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."

Because a contractor's potential liability is based on the notion that it has superior knowledge, finding the contractor did not have such superior knowledge extinguishes its liability. In this case, [the general contractor] did not have superior knowledge of the lighting as the hospital admitted it was responsible for the lighting on the premises. Accord-

ing to Mr. McMillan, the hospital's Engineering and Security divisions maintained the lights. Thus, based on the absence of evidence suggesting [the general contractor] had any superior knowledge, the trial court did not err in granting summary judgment to [the general contractor]. Moreover, the hospital, with superior knowledge, may have owed a duty to invitees that [the general contractor] did not owe; consequently, the trial court acted properly in separately considering the duties owed by the respective parties in ruling on the motions for summary judgment. The fact that the trial court denied the hospital's motion for summary judgment did not automatically require the court to deny the [general contractor's motion].

*Id.* at 256–57, 607 S.E.2d at 365 (internal citations omitted).

Likewise, another construction premises liability decision from this court is *Larimore v. Carolina Power & Light,* 340 S.C. 438, 531 S.E.2d 535 (Ct.App.2000). In *Larimore,* Thad Williams hired H.P. Larimore to install vinyl siding on his home. *Id.* at 441, 531 S.E.2d at 537. On the day Larimore was to begin the installation, Carolina Power & Light (CP & L) arrived at Williams's home to install underground utility lines. *Id.* at 442, 531 S.E.2d at 537. CP & L dug a trench to bury the utility lines, and Larimore was present and aware of the trench. *Id.* CP & L filled the trench with dirt, and after rainfall, the trench settled several inches. *Id.* Four days after CP & L's installation, Larimore stepped onto the dirt covering the trench, the trench caved in, and Larimore fractured his hip. *Id.* Larimore sued Williams and CP & L. *Id.* At trial, Williams moved for directed verdict, arguing "he was not responsible for warning Larimore of an open and obvious condition." *Id.* at 442–43, 531 S.E.2d at 537. The trial court granted Williams's directed verdict motion. *Id.* at 443, 531 S.E.2d at 537. Larimore appealed. *Id.* at 444, 531 S.E.2d at 538. In discussing Williams's liability, this court opined:

Williams, as the property owner, owes a duty to those on his property commensurate with their status. South Carolina recognizes four classes of persons present on the property of another: adult trespassers, invitees, licensees, and children. The level of care owed is dependent upon the class of the person present. Because Larimore was a business visitor invited to enter or remain on the property for a

purpose directly or indirectly connected with Williams, Larimore was an invitee.

"The owner of property owes to an invitee or business visitor the duty of exercising reasonable or ordinary care for his safety, and is liable for injuries resulting from the breach of such duty." The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge. THE DEGREE OF CARE required is commensurate with the particular circumstances involved, including the age and capacity of the invitee.

. . . .

Under a premises liability theory, a contractor generally equates to an invitor and assumes the same duties that the landowner has, including the duty to warn of dangers or defects known to him but unknown to others. A general contractor, however, is not liable to an invitee for an injury resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care. The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.

Accordingly, Williams, in both his role as landowner and general contractor, owed no duty to warn Larimore of the open and obvious defect.

*Id.* at 444–48, 531 S.E.2d at 538–40 (internal footnotes omitted).

■ Here, we believe the trial court properly granted the Cupps' summary judgment motion. The disputed fact of whether Mike Cupp informed Yobs he would mark the septic tank location is not a *material* fact when determining the Cupps' liability. The location of the septic tank was a latent danger, and B & Y was the Cupps' invitee; therefore, the Cupps had a duty to warn B & Y. Likewise, B & Y owed the same duty to Lanier, its invitee. We find the Cupps discharged their duty to warn their invitee when Mike Cupp and Yobs discussed the septic tank location. Lanier suffered injury because its invitor, B & Y, failed to perform its duty to warn Lanier of the septic tank location. The Cupps, as the

landowners in this particular factual scenario who informed their general contractor of the latent danger posed by the septic tank, did not owe Lanier a duty to warn. Accordingly, in this situation, summary judgment was properly granted as a matter of law because no genuine issue of material fact exists.

## II. Rule 59 Motion

B & Y argues the trial court erred in failing to address whether the evidence supports a finding that the Cupps assumed a duty of care by agreeing to mark the septic tank before the construction began and then breached their duty by failing to mark the septic tank. Similarly, while not a stated issue, Lanier argues this was error in their appellate brief. We disagree.

Recently, our supreme court held "that in cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment." *Hancock v. Mid–South Mgmt. Co., Inc.*, 381 S.C. 326, 331, 673 S.E.2d 801, 803 (2009). Here, viewing the evidence in the light most favorable to B & Y and Lanier, there is not a scintilla of evidence to suggest the Cupps permanently assumed B & Y's duty to warn Lanier of the latent danger. Assuming Mike Cupp initially assumed B & Y's duty to warn the subcontractors of the septic tank location, B & Y reassumed the duty during the next three months before Lanier's accident. It is undisputed that the Cupps did not mark the septic tank location, and that B & Y received other subcontractors on the construction site, including a concrete delivery, and directed them around the septic tank. Thus, while the Cupps' initial assumption of B & Y's duty to warn its invitees of latent dangers is questionable, the undisputed evidence proves B & Y reassumed the duty to warn its subcontractors by its actions during the three months between Yobs's conversation with Mike Cupp and Lanier's accident. Accordingly, summary judgment was properly granted in this case because there is no evidence that at the time of Lanier's accident the Cupps assumed B & Y's duty to warn its invitor.

## CONCLUSION

Accordingly, the trial court is
**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.